

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2008

# USA v. Soto

Precedential or Non-Precedential: Precedential

Docket No. 07-2643

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Soto" (2008). *2008 Decisions.* Paper 584.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/584

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2643

———————

UNITED STATES OF AMERICA

v.

TONY SOTO,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 06-cr-00328-2)
District Judge: Hon. John R. Padova

———————

Argued June 5, 2008

BEFORE: AMBRO, CHAGARES and COWEN,
Circuit Judges

(Filed: August 19, 2008)

Daniel I. Siegel, Esq. (Argued)

Office of the Federal Public Defender
704 King Street
First Federal Plaza, Suite 110
Wilmington, DE 19801

Counsel for Appellant

Eric B. Henson, Esq. (Argued)
Robert A. Zauzmer, Esq.
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

———————

OPINION

———————

COWEN, <u>Circuit Judge</u>.

In November 2006, a jury found Tony Soto guilty of four counts of aiding and abetting his girlfriend, Theresa Brown, in making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A) & § 2. Soto appeals his conviction. We will affirm.

I.

Fred Delia owns and operates a gun shop in Philadelphia, Pennsylvania, and has a federal firearms license. When a person buys a gun at his store, he is required to fill out a 4473

2

form.  On the form, Question 12A asks the person purchasing the gun who is the "actual buyer" of the firearm.  Specifically, the question asks, "Are you the actual buyer of the firearm(s) listed on this form?  Warning:  You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."  (App. 42.)

On December 2, 2004, Brown bought a firearm from Delia at his gun shop.  At the time of the purchase, two males accompanied her.  The men looked at the firearms and did most of the talking with Delia.  According to Delia, Brown did not know what she was doing with respect to firearms.  Eventually, Brown purchased a shotgun.  At the time of purchase, she filled out a 4473 form, and certified that she was the "actual buyer" of the firearm.  Brown also purchased firearms under similar circumstances on March 29, 2005, and again on April 1, 2005, from Delia at his store.  As with the December 2, 2004 purchase, Brown certified on a 4473 form that she was the "actual buyer" of the firearms.

The circumstances of these three purchases made Delia suspicious.  Subsequently, he contacted the Bureau of Alcohol, Tobacco and Firearms (ATF), and indicated that he believed that Brown was a "straw purchaser" of the firearms.  A "straw purchaser" is someone who states that she is buying a firearm for herself when, in actuality, she is buying it for someone else. Following up on this tip, ATF agents set up surveillance at Delia's gun shop and at Brown's home.  On April 6, 2005, agents observed Brown leave her home and get into a taxi with two males.  One of the males was later identified as Soto.  The taxi drove to Delia's gun shop where Brown purchased a

firearm. She again certified on a 4473 form that she was the "actual buyer." After leaving the store, ATF agents eventually detained all three individuals and took them to headquarters for questioning.

After being given his <u>Miranda</u> warnings, Soto told investigators that he was Brown's boyfriend. He admitted acting as protection for Brown on several occasions when she went to Delia's gun shop to purchase firearms. Soto admitted that the firearms were purchased so that they could be resold to drug dealers. Soto was paid $100 for his services, and Brown was paid $250.

In June 2006, Soto was indicted on four counts of aiding and abetting Brown in making false statements to a federal firearms licensee. The government's case at trial included testimony from Delia, Brown and the investigator who conducted Soto's interrogation. The jury convicted Soto on all four counts. He was sentenced to thirty-three months' imprisonment, to be followed by three years of supervised release. Soto timely filed a notice of appeal.

On appeal, Soto makes several arguments. First, he argues that the evidence produced at trial was insufficient to establish that he aided and abetted Brown in making false statements with respect to the false statements on the 4473 forms. Second, he asserts that the jury should have decided the issue of whether the information that was falsely answered by Brown was required to be kept in the records by Delia. Third, Soto argues that even if the trial judge properly decided the second issue, Brown's false statement that she was the "actual buyer" of the firearms was not required by law to be kept in Delia's records.

4

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." See United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). In examining a sufficiency of the evidence claim, "'[i]t is not for us to weigh the evidence or to determine the credibility of witnesses.'" Id. (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)). Rather, we "view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See id. (internal quotation marks and citations omitted). A claim for insufficiency of the evidence places an very heavy burden on the appellant. See id. When reviewing a question of law, or a District Court's interpretation of a statute, we exercise plenary review. See, e.g., United States v. Rivera Constr. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988).

## III.

### A. *Sufficiency of the Evidence*

Soto claims that the evidence produced at trial was insufficient to support his conviction. Specifically, he asserts that he was unaware that form 4473 would ask Brown if she was the "actual buyer." He argues that because he was not on notice of this "actual buyer" question, the evidence produced at trial does not support the inference of the culpable knowledge necessary to support the conviction of aiding and abetting. We disagree.

5

In order to convict a defendant of aiding and abetting the commission of a crime, the government must prove: (1) that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with the intent to facilitate it. See United States v. Dixon, 658 F.2d 181, 189 n.17 (3d Cir. 1981).

> In order to aid and abet . . . a defendant must do more than associate with individuals involved in the criminal venture. (He must) participate in (the criminal enterprise) as something he wishes to bring about and that he seeks by his action to make succeed . . . Mere presence at the scene of the crime, even in the company of one or more of the principal wrongdoers, does not alone make one an "aider and abettor," unless the jury is convinced beyond a reasonable doubt that (the) defendant (did) something to forward the crime and that he was a participant rather than merely a knowing spectator.

Id. at 189 (internal quotation marks and citations omitted). With respect to aiding and abetting, "[i]nferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and

convincing connection between the facts established and the conclusion inferred." United States v. Cartwright, 359 F.3d 281, 287 (3d Cir. 2004) (internal quotation marks and citations omitted).

Soto was convicted of aiding and abetting Brown in making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A). Section 924(a)(1)(A) states that whoever:

> knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of the person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter; shall be fined under this title, imprisoned not more than five years, or both.

As noted by the District Court in denying Soto's motion for judgment of acquittal, the evidence produced at trial revealed that Soto escorted Brown to Delia's gun shop on several occasions. He was present in the store with her at the time of these purchases and actively involved himself in the purchase of the firearms. Indeed, he was paid $100 in his role as protection for Brown. He knew that the guns were not for her, and that they were going to be resold to drug dealers. In this case, Soto was more than merely a knowing spectator. He was actively involved in the gun purchase process and participated in the criminal enterprise. He actively involved

7

himself in the "straw purchase," and knew that Brown was a "straw purchaser."

A similar case arose in <u>United States v. Abfalter</u>, 340 F.3d 646 (8th Cir. 2003). In that case, Michael Williams had his girlfriend, Roxanne Abfalter, buy firearms for him over a period of two months because he was a convicted felon. Williams was present when Abfalter made these purchases. Williams handled the firearms and negotiated a sale price at the gun store. At the time of each purchase, Abfalter completed a 4473 form, and affirmed that she was the "actual buyer" of the firearm. After he was arrested, Williams confessed that he convinced Abfalter to purchase the firearms for him because he was a convicted felon. He was then going to resell the firearms for a profit. <u>See</u> <u>id.</u> at 650.

Among his other crimes, Williams was convicted of aiding and abetting Abfalter in making false statements in firearms transactions in violation of 18 U.S.C. § 924(a)(1)(A) and § 2. <u>See</u> <u>id.</u> at 653. Based on the evidence produced at trial as outlined above, the Court of Appeals for the Eighth Circuit determined that this evidence was sufficient to uphold Williams' conviction for aiding and abetting Abfalter in the making of false statements in violation of § 924(a)(1)(A).

The circumstances of Williams conviction in <u>Abfalter</u>, and Soto's conviction in this case, are quite similar. In both cases, the alleged aider and abetter was intimately involved in the firearms purchases. Both Williams and Soto were present at the time of the firearms purchases, and the evidence indicated that both Williams and Soto had a history with their "straw purchaser."

8

Soto does not cite to any case which holds that to be convicted of aiding and abetting a violation of § 924(a)(1)(A), the government must offer proof that the defendant expressly knew that the "straw purchaser" was falsely certifying to a specific question on the 4473 form, and that he specifically instructed his "straw purchaser" to lie to that particular question. Indeed, circumstantial evidence can be sufficient to uphold an aiding and abetting conviction. See, e.g., United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984) (noting that record contained sufficient circumstantial evidence for the jury to find the defendant guilty of aiding and abetting the substantive crimes charged). Instead, Soto relies heavily on our decision in Cartwright, 359 F.3d 281, in asserting that the evidence against him was insufficient. In Cartwright, we examined whether there was sufficient evidence regarding a conviction for aiding and abetting the distribution of cocaine. Cartwright is distinguishable.

In Cartwright, a sting operation evolved when Prince Muhammed El agreed to cooperate with law enforcement authorities to set up a cocaine purchase. Muhammed El contacted Rashine Ellis to purchase the cocaine. Ellis subsequently contacted her supplier, Osiris Jackson, for the purchase. The cocaine purchase took place in a parking lot. When arriving at the parking lot, Ellis contacted Jackson using her two-way text messaging service. Jackson approached Ellis' vehicle and asked if Muhammed El had the money. After Muhammed El stated that he had the money for the purchase, Jackson exited the vehicle and walked to a different parking lot that was not under government surveillance. Several minutes later, Jackson returned from the other parking lot holding a bag. A person later identified as Cartwright was seen walking

9

alongside Jackson. The two men were speaking to each other. Jackson walked to Ellis' car and Cartwright stopped in front of a store approximately 100 feet from Ellis' car. After entering Ellis' car, Jackson showed Muhammed El the cocaine. Government agents then converged on the car. Subsequently, the agents observed Cartwright enter a nearby store "fairly quickly." Agents followed Cartwright into the store. They recovered a loaded semi-automatic weapon, a cell phone and a two-way texting devise similar to one recovered from Jackson. See id. at 283-85.

Cartwright was convicted of aiding and abetting the distribution of cocaine in violation of 21 U.S. C. § 841 and 18 U.S.C. § 2. On appeal, Cartwright argued that the evidence produced at trial was insufficient to support his conviction. At the outset, we noted that the threshold question was whether Cartwright knew that the subject matter of the transaction was a controlled substance, rather than some other form of contraband. See Cartwright, 359 F.3d at 287. In addition to concluding that the government failed to present direct evidence that Cartwright knew that he was involved in a drug transaction, we also concluded that the government failed to show a logical and convincing connection between the facts established and the conclusion inferred. See id. at 288. Specifically, we stated that the government only showed that:

> (1) Cartwright made his first appearance in the breezeway at the same time that Jackson was observed carrying the shopping bag containing the cocaine; (2) Cartwright walked side-by-side

10

> with Jackson through the breezeway and the two were observed talking to each other; (3) Cartwright possessed a semi-automatic firearm, a cellular phone, $180 in cash, and a Motorola Timeport two-way text messaging device; and (4) Cartwright did not possess any keys to a vehicle of his own.

Id. We determined that, "in the absence of any evidence indicating a substance of the conversation with Jackson, any evidence of a prior relationship with Jackson, or any other direct evidence indicating Cartwright's knowledge, the jury could only speculate as to Cartwright's knowledge." Id. at 289. Thus, we concluded that this speculation was insufficient to infer a conclusion that Cartwright had knowledge of the transaction. Id.

Unlike Cartwright, Soto had intimate knowledge of the "straw purchase." Furthermore, the evidence in this case indicated that Soto and Brown had a prior relationship. Soto knew that the firearms were not for Brown, yet he allowed her to fill out the purchase paperwork. Furthermore, he was present in the gun store at the time she purchased these firearms. Soto was clearly part of the criminal enterprise. He was paid for his services to act as protection for Brown in the purchase of the firearms. Viewing this evidence in the light most favorable to the government, we find that this evidence was legally sufficient to support the conviction because there existed a logical and convincing conclusion between the facts established and the

11

conclusion inferred that Soto aided and abetted Brown in violating § 924(a)(1)(A).

B. *"Required by this chapter"*

Soto makes two arguments with respect to this issue. First, he asserts that the issue of whether the "required by this chapter" language under Section 924(a)(1)(A) was an issue that had to be decided by the jury instead of the judge. Second, Soto argues that even if the District Court properly determined that the issue was not one for the jury, the "actual buyer" question on form 4473 was not required to be kept by the federal firearms licensee. For the following reasons, we reject each of these arguments.

1. The "required by this chapter" issue was a legal issue

At trial, the District Court instructed the jury that:

> You've heard testimony, you have evidence before you that a federal firearms licensee is required to keep the information pertaining to the actual buyer. You've heard that testimony and you heard testimony that statements were made within the context of transactions that involved the acquisition of a firearm.
>
> So that it is incumbent upon the Government to prove beyond a reasonable doubt that the false statement or statements were made

with respect to the information required to be kept in the records of a licensed firearms dealer, and you are instructed, I do tell you and instruct you, that a licensed firearm dealer is required by federal regulation to record each gun sale on an ATF Form 4473, which requires the name, address, and other information concerning the transferee, the person who is actually purchasing the gun. And you are further instructed that a licensed firearms dealer is required by federal regulation to retain each Form 4473 obtained in the course of transferring custody of firearms . . . The information required to be kept in the records of the of a licensed federal firearms dealer includes, as I have told you, the actual buyer's identity. And a straw purchaser is not the actual buyer of the a firearm where a straw purchase is taking place.

(App. 182-83.) Soto asserts that the trial judge should have allowed the jury to decide whether the "actual buyer" question was information required by the statute to be kept by the federal firearms licensee in his records. He relies heavily on the Supreme Court's decision in United States v. Gaudin, 515 U.S.

13

506 (1995), to support this argument.  <u>Gaudin</u> is not applicable in this case.

In <u>Gaudin</u>, the defendant was convicted of making material false statements in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001.[1]  The issue presented in <u>Gaudin</u> was whether it was constitutional for the trial judge to refuse to submit the question of materiality to the jury.  <u>See</u> 515 U.S. at 507.  Ultimately, the Supreme Court held that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.  The trial

---

[1] At the time, 18 U.S.C. § 1001 stated that:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

judge's refusal to allow the jury to pass on the 'materiality' of Gaudin's false statements infringed that right." Id. at 522-23.

Unlike the factual determination of whether the statements in Gaudin were material, whether the 4473 form, and its contents, were "required by this chapter" to be kept by the federal firearms licencee was purely a legal matter. This legal issue was within the province of the trial judge to decide. Cf. Gares v. Willingboro Twp., 90 F.3d 720, 734 (3d Cir. 1996) (noting that issues of statutory interpretation are pure legal issues). We reject Soto's first argument that the "required by this chapter" language in § 924(a)(1)(A) was an issue that had to be decided by the jury.

> 2. The "actual buyer" question was information that was required to be kept by the federal firearms licensee

Soto asserts that the District Court erred when it determined that the "actual buyer" question in form 4473 is required to be kept by the federal firearms licensee pursuant to Chapter 44 of Title 18. At least one other Circuit Court has squarely addressed this issue. See United States v. Nelson, 221 F.3d 1206 (11th Cir. 2000). In Nelson, the issue was whether the identity of the "actual buyer" of the firearm was the type of information that federal firearms dealers are required to keep in their records. See id. at 1209. As noted by the Court of Appeals for the Eleventh Circuit, "[s]everal provisions in Chapter 44 of Title 18 of the United States Code, which is the chapter referred to in § 924(a)(1)(A), require licensed firearms dealers to keep records containing information about the identity of individuals who buy firearms." Id. For example, 18 U.S.C. § 922(b)(5) makes clear that the information that these records must contain includes, at a minimum, the name, age and

15

place of residence of any individual who purchases a firearm. Section 922(s)(3) requires that the licensed dealer obtain a statement from the transferee which includes a description of the type of identification used. Additionally, section 923(g)(1)(A) states that, "[e]ach licensed importer, licensed manufacturer and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." Among the regulations promulgated by the Attorney General are the legal requirements that each federally licensed firearm dealer record each sale on the 4473 form, see 27 C.F.R. § 478.124(a), and that each federally licensed firearm dealer retain the 4473 form in his records. See 27 C.F.R. § 478.124(b).

In Nelson, the Court of Appeals for the Eleventh Circuit noted that "information about the actual buyer's identity is necessary in order for the firearms dealer to ascertain whether the potential purchaser is in fact eligible to purchase a firearm under Chapter 44." 221 F.3d at 1209 (citing 18 U.S.C. § 922(b)(1)-(3) (making it unlawful for licensed dealers to sell firearms to individuals who are ineligible to purchase them as a result of restrictions imposed under state law or due to the individual's age or out of state residence)). The court explained that, "[i]f an ineligible buyer could simply use a 'straw man' or agent to obtain a firearm from a licensed dealer, the statutory scheme would be too easily defeated." Id. The Court of Appeals for the Eleventh Circuit determined that § 924(a)(1)(A) applied to situations involving "straw purchases." See id. at 1210.

We agree with the reasoning and holding in <u>Nelson</u>, and find that § 924(a)(1)(A) applies to the circumstances of the "straw purchases" presented in this case. As previously stated, the statute makes clear that the federal firearms licensee must keep records of sales of firearms on forms that the Attorney General prescribes. <u>See</u> 18 U.S.C. § 924(g)(1)(A). Among the regulations prescribed by the Attorney General is the requirement that the licensee have each firearm applicant fill out form 4473, which includes the "actual buyer" question that Brown falsely certified in this case, and that the firearms licensee keep that form in his records. <u>See</u> 27 C.F.R. § 478.124(a)-(b). We conclude that the information Brown falsely answered on form 4473 was information that was "required by this chapter" to be kept in the records by the federal firearms licensee as stated in § 924(a)(1)(A). As noted by the court in <u>Nelson</u>, to conclude otherwise would too easily defeat the statutory scheme. <u>See</u> 221 F.3d at 1209.

IV.

For the reasons outlined above, we will affirm.