NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3811
_____

UNITED STATES OF AMERICA

v.

TROY HOLMES,
                    Appellant


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 08-cr-00495-001)
District Judge: Honorable Harvey Bartle, III


_____

Submitted Under Third Circuit LAR 34.1(a)
June 11, 2010
_____

Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: July 23, 2010)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Troy Holmes ("Holmes") appeals his conviction and sentence from the

District Court for the Eastern District of Pennsylvania.  He contends that: (1) there is

insufficient evidence to support his conviction; (2) the District Court improperly denied the jury's request to access the testimony of a witness; (3) his sentence of 300 months of imprisonment was unreasonable; and (4) his trial counsel rendered ineffective assistance of counsel. For the reasons set forth below, we will affirm the District Court's judgment of conviction and sentence, and deny Holmes' ineffective assistance of counsel claim, without prejudice to his right to raise the claim pursuant to 28 U.S.C. § 2255.

## I. BACKGROUND

We write solely for the benefit of the parties and recount only the essential facts.

On July 29, 2007, at approximately 2:30 a.m., Issa Ouattara parked his car on Sixth Street in Philadelphia. As he and his girlfriend, Jelene Radulovic, exited the car and began walking, Milton Brown approached them and pointed a gun at Ouattara's face. On Brown's command, Ouattara dropped his money, car keys, and cell phone on the sidewalk. Brown then instructed Ouattara to "get out of here." (App. 44.)

Throughout this encounter, Holmes stood next to Brown but never spoke. At the time, Holmes stood six feet tall and weighed two hundred sixty pounds. He was, as Ouattara described him, "physically bigger" than Brown. (App. 49.)

When Ouattara ran away from the scene, he found Officers Brian Lauf and Michael Jachimski nearby and reported what had happened. With Ouattara in the backseat of their car, the officers began driving to investigate. They drove within five feet of Ouattara's car and saw Brown in the driver's seat and Holmes seated beside him,

2

in the front passenger seat. A short car chase ensued but ended quickly, when Brown crashed Ouattara's car. Brown and Holmes then fled the vehicle on foot, in the same direction. Officer Jachimski ran after them.

Ultimately, both Brown and Holmes were captured nearby. Ouattara identified Holmes to the police and later testified that he was confident in his identification. He further testified that he made his identification within ten minutes of the carjacking.

Following a three day trial, a jury found Holmes guilty of three charges: (1) conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; (2) aiding and abetting a carjacking, in violation of 18 U.S.C. §§ 2119 and 2; and (3) aiding and abetting the use and carrying of a firearm during, and in relation to, a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2. After the verdict, Holmes, proceeding *pro se*, moved for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c). The District Court denied the motion and sentenced Holmes to 300 months of imprisonment. Holmes filed this timely appeal.

## II. JURISDICTION

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the judgment of conviction, pursuant to 28 U.S.C. § 1291, and to review the sentence, pursuant to 18 U.S.C. § 3742.

## III. ANALYSIS

### A.

Holmes appeals the District Court's denial of his Rule 29 motion for judgment of acquittal, arguing that there is insufficient evidence to sustain a guilty verdict for any of the three counts on which he was convicted. We exercise plenary review over the denial of a Rule 29 motion. United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005). Applying the same standard as the District Court, we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence." Id. (internal quotation marks omitted). It is "immaterial" that the evidence may permit a "less sinister conclusion" than the one the jury made. United States v. Smith, 294 F.3d 473, 478 (3d Cir. 2002). "To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt." Id. Rather, a finding of insufficiency of the evidence "should be confined to cases where the prosecution's failure is clear." Brodie, 403 F.3d at 133 (internal quotation marks omitted).

Holmes posits that his "mere presence" at the scene is insufficient to support his conviction for either the conspiracy to carjack count or the aiding and abetting a carjacking count. Because the third count, § 924(c)(1), requires the use of a firearm during, or in relation to, a crime of violence, Holmes argues that, since there is insufficient evidence for his carjacking offense, the § 924(c)(1) conviction also cannot stand.

To prove conspiracy, the government must show "that the alleged conspirators

shared a unity of purpose, the intent to achieve a common goal, and an agreement to work together toward the goal." United States v. Reyeros, 537 F.3d 270, 277 (3d Cir. 2008) (internal quotation marks omitted). "The existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference[] that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding." Brodie, 403 F.3d at 134 (internal quotation marks omitted).

Holmes willingly accompanied Brown throughout the commission of the crime, and afterward. Additionally, his presence, particularly in light of his commanding size, likely amplified the threat that Brown presented to the victims. A rational jury could make the reasonable and logical inference from the evidence that Holmes had an intent to achieve a common goal with Brown and shared a unity of purpose with him. Reyeros, 537 F.3d at 277. Although Holmes did not speak or carry a gun, his actions suggest a level of participation far greater than "mere presence." See, e.g., United States v. Leon, 739 F.2d 885, 893 (3d Cir. 1984) ("Although there may be innocent explanations consistent with these facts, we think that a reasonable jury could infer from these circumstances that [the defendant] was not present for some innocuous reason . . . ."). There is sufficient evidence to support Holmes' conviction on the conspiracy count.

Holmes similarly argues that there is insufficient evidence to sustain his aiding and abetting conviction. To establish aiding and abetting, "the government must prove: (1)

that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with the intent to facilitate it." United States v. Soto, 539 F.3d 191, 194 (3d Cir. 2008). "Because conspiracy and aiding and abetting both require that the defendant specifically intend to further the substantive offense . . . our analysis is the same for both." United States v. Carbo, 572 F.3d 112, 116 n.2 (3d Cir. 2009).

Although Holmes reiterates his position that his "mere presence" does not establish that he specifically intended to further the carjacking, as discussed above, the record demonstrates that Holmes was more than a "mere presence." A rational jury could have found, beyond a reasonable doubt, that Holmes aided and abetted the carjacking because he participated in the crime "as something he wishe[d] to bring about and that he [sought] by his action to make succeed." Soto, 539 F.3d at 194.

Finally, because sufficient evidence exists to support a conviction for aiding and abetting a carjacking, Holmes' argument regarding his § 924(c)(1) conviction also fails.

**B.**

Holmes also contends that the District Court erred when it denied the jury's request for access to Officer Jachimski's testimony. Holmes did not voice this objection to the District Court during the trial. In light of Holmes' failure to object, we review the record for plain error only. United States v. Olano, 507 U.S. 725, 731 (1993). To establish a plain error, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s]

6

substantial rights.'" Johnson v. United States, 520 U.S. 461, 466-67 (1997) (alteration in original) (quoting Olano, 507 U.S. at 732). Generally, an error affects substantial rights where the error is "prejudicial," that is, where the error "affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. The defendant bears the burden of establishing such prejudice. Id. at 734-35. If we find that a plain error affected the defendant's substantial rights, we may exercise our discretion to correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 467 (alteration in original).

Although the District Court may have committed a plain error when it denied the jury's request for access to Officer Jachimski's testimony,[1] Holmes has not shown that the

---

[1] In United States v. Zarintash, we stated that although a trial court has "broad discretion in deciding whether to accede to a jury's request for a reading of testimony," its discretion to deny a request is limited to two rationales: "first, that requests to read testimony may slow the trial where the requested testimony is lengthy; second, that reading only a portion of the testimony may cause the jury to give that portion undue emphasis." 736 F.2d 66, 69-70 (3d Cir. 1984); see also United States v. Shabazz, 564 F.3d 280, 285 (3d Cir. 2009) (same). We further held that technicalities about a jury's request—in that case, a jury request that asked to "see" testimony rather than to have it "read"—are not an opportunity for "unlimited discretion not to offer to read the testimony to the jury." Zarintash, 736 F.2d at 70. We cautioned that "[a]t the very least the court should have asked the jury whether the jurors wanted to hear the testimony read before determining that issue for itself" because it is "the responsibility of the trial court to determine the exact contours of the jury's interest in the testimony." Id.

Nonetheless, the District Court failed to explain its decision to deny the jury's request. The relevant part of the record reveals only this statement from the District Court: "Members of the jury, I have your note, and I've shared it with counsel. The note states: 'Can we have access to Officer Jachimski's testimony from court transcripts?' And it's signed by the foreperson. Unfortunately, we cannot make that available to you. You're just going to have to use your recollection of what he and other witnesses stated

denial of the jury's request affected the outcome of his trial. Generally, Officer Jachimski's testimony bolstered the prosecution's case, not the defense's—he spoke about the police chase and identified Holmes as the passenger in Ouattara's car. Inasmuch as there are aspects of his testimony that may have weighed in the defense's favor, they appear to be minor and were not likely forgotten by the jury.[2] More importantly, those aspects are likely outweighed by the fact that Officer Jachimski was not the prosecution's sole eyewitness. Ouattara also testified, and he was the only eyewitness who could place Holmes at the scene of the crime. Holmes himself suggested that Ouattara provided the prosecution's more significant eyewitness testimony. (See Appellant's Br. at 19 ("This case was primarily about the accuracy and reliability of Mr. Ouattara's identification of Mr. Holmes as the second man.").)

We do not find that the District Court's failure to read Officer Jachimski's testimony back to the jury prejudiced Holmes. Accordingly, Holmes' claim is denied.

## C.

Holmes next asserts that his sentence is both procedurally and substantively unreasonable. When reviewing a sentence, we apply an abuse of discretion standard.

during the trial." (App. 206.)

[2] Concern about the jury's collective memory is alleviated by the fact that the trial lasted only three days, and that Officer Jachimski testified over the course of the last two days of trial. Additionally, the specific parts of Officer Jachimski's testimony in which Holmes finds support for his case were not so discrete and fleeting that the jury's recollection of those parts likely depended on the transcript of his testimony.

United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). We begin by ensuring that the sentence is procedurally reasonable and, if it is, we proceed to evaluate its substantive reasonableness. Id. At both stages, the party challenging the sentence bears the burden of proving unreasonableness. Id.

A sentence is procedurally reasonable if the sentencing court did not commit a significant procedural error, such as improperly calculating the sentencing range under the United States Sentencing Guidelines ("Guidelines") or failing to adequately explain the chosen sentence. Id. Holmes' only argument is that the District Court erred by not lowering his offense level by two levels for a "minor participant" role, pursuant to Guidelines § 3B1.2(b).

Holmes misunderstands the Guidelines. The District Court correctly calculated that, under Guidelines § 4B1.1 for career offenders, the advisory range for Holmes was 360 months to life imprisonment. The offense level reduction that Holmes seeks for a minor participant role is irrelevant. See United States v. Johnson, 155 F.3d 682, 684 & n.4 (3d Cir. 1998) (holding minor role adjustment is overwritten by career offender provision under proper sequential application of Guidelines). Even if granted the two level departure, Holmes' Guidelines calculation would not have changed.

We next evaluate the substantive reasonableness of Holmes' sentence. To review a sentence for substantive reasonableness, we take into account "the totality of the circumstances." Tomko, 562 F.3d at 567. We give "due deference to the district court's

9

determination that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the sentence." Id. at 568 (internal quotation marks omitted). Furthermore, we "recognize that reasonableness is a range, not a point. As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." United States v. Wise, 515 F.3d 207, 215 (3d Cir. 2008) (citation and internal quotation marks omitted).

Holmes contends that his sentence is substantively unreasonable because it violates the parsimony principle expressed in § 3553, which directs courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in § 3553(a). See United States v. Olhovsky, 562 F.3d 530, 552 (3d Cir. 2009); 18 U.S.C. § 3553(a). He claims that his sentence is "greater than necessary" because he was "nothing more than a silent observer." (Appellant's Br. at 35.)

The District Court sentenced Holmes to 300 months' imprisonment, a below-Guidelines sentence. In doing so, the District Court carefully considered the § 3553(a) factors. For instance, the District Court noted Holmes' "long and serious criminal record." (App. 245.) The District Court contemplated the "very, very serious" nature of the crimes Holmes had committed, concluding that "the public needs to be protected from [him]" because "crimes of this kind infect the quality of life in the City of Philadelphia." (Id.) Still, the District Court imposed a sentence that is sixty months below the minimum Guidelines range after finding that 300 months was "sufficient" to

10

further the goals of sentencing.  Holmes' sentence is substantively reasonable.

**D.**

Lastly, Holmes raises an ineffective assistance of counsel claim.  He criticizes his counsel for not calling an expert witness on the unreliability of eyewitness testimony to enhance his mistaken identity defense.  Holmes is also dissatisfied that additional witnesses, such as Brown, Radulovic, or an alibi witness, were not called to testify.

An ineffective assistance of counsel claim requires a showing that the counsel's performance was deficient, and that the deficient performance prejudiced the defense. Lewis v. Horn, 581 F.3d 92, 106-07 (3d Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  Generally, these claims are properly raised in a collateral attack, pursuant to 28 U.S.C. § 2255, not on direct appeal.  See Massaro v. United States, 538 U.S. 500, 504-06 (2003) (explaining that "§ 2255 is preferable to a direct appeal" for ineffective assistance claims because trial records are often "incomplete or inadequate" for the adjudication of such claims and the trial court is the forum best suited to develop the necessary facts).  We review ineffective assistance claims on direct appeal only where the record is sufficient to allow an evaluation of the claim without further factual development.  United States v. Polk, 577 F.3d 515, 520 (3d Cir. 2009).

The record here is inadequate to establish either deficiency or prejudice.  Holmes has not shown that these witnesses were available, that their testimony would have been admissible, or that their testimony would have been helpful to his defense.  See Massaro,

538 U.S. at 505 (recognizing that trial record "may contain no evidence of alleged errors of omission, much less the reasons underlying them"). We cannot speculate on these matters. Given the insufficiency of the record, Holmes' claim is denied.[3]

## IV. CONCLUSION

For the reasons stated above, we affirm the judgment of conviction and the sentence.

---

[3] This determination does not prejudice his ability to raise this issue on a collateral attack pursuant to § 2255.