# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2020

Lyle W. Cayce
Clerk

No. 19-10639

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DARIUS FIELDS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CR-388-1

Before SMITH, CLEMENT, and OLDHAM, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Darius Fields was tried and convicted of three firearms offenses. On appeal, Fields raises three issues. First, he contends that the evidence was insufficient to support his conviction under an aiding-and-abetting theory of making false statements in connection with the acquisition of a firearm, as well as making false statements with respect to information that a licensed firearms dealer is required to keep in its records. Second, Fields asserts that the evidence was insufficient to support his conviction of possession of a firearm and ammunition by a convicted felon. Third, Fields posits that the district court abused its discretion by including, in the written judgment, a

special condition of supervised release that it omitted from the oral pronouncement of sentence. We affirm the conviction but vacate the sentence in part and remand for amendment of the written judgment by removing the unpronounced special condition.

## I.

Fields was convicted of acquiring a firearm from a licensed dealer by false or fictitious statement, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2 (Count One) and for making a false statement with respect to information required to be kept in the records of a federally licensed firearms dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Count Two). The jury also found Fields guilty of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three).

Counts One and Two arise from the purchase of a pistol. In May 2017, Fields drove LaPorshya Polley, his then-girlfriend and subsequent co-defendant, to DFW Gun Range, a federally licensed firearms dealer located in the Dallas-Fort Worth area. There, Polley purchased an FN 5.7 millimeter pistol. As part of the transaction, she completed a Bureau of Alcohol, Tobacco, Firearms and Explosives Firearms Transaction Record ("Form 4473"), in which she certified that she was purchasing the firearm for herself and not for someone else.

Fields entered the store several minutes after Polley, proceeded to examine the contents of various display cases, and briefly stood near Polley and the attending salesman. Despite their close proximity, Fields did not acknowledge or otherwise indicate that he knew Polley. He left the store alone; Polley remained there for approximately thirty minutes, completing the requisite forms, successfully clearing a background check, and finalizing the purchase. During that time, Fields and Polley exchanged several texts, in one of which Polley wrote, "They only make the kind you told me not to

get." After completing the purchase, Polley left the store carrying a bag. She rejoined Fields in the car, and they departed together.

Events during the following month gave rise to Count Three. In June 2017, the police sought Fields in connection with the kidnapping of a teenage girl. The officers located Fields with Polley in a hotel room, where they found a box of ammunition on a desk alongside various items, including Fields's belongings. Police found a loaded pistol—the same FN 5.7 pistol that Polley had purchased at the DFW Firing Range—in a nearby bag under some clothes.

The police also discovered a firearm in the car that Fields and Polley drove to the hotel and had parked outside. After initially denying that he had traveled in the car, Fields admitted it belonged to a friend and that he rode in it to the hotel. He gave officers the car key and permission to search the vehicle. Before searching, police looked through the window and saw an AK-47 style pistol that was partially covered in clothes. They later discovered that, like the FN 5.7 pistol, the second firearm had also been purchased by Polley.

A jury determined that Fields aided and abetted Polley in making a straw purchase, thus finding him guilty of Counts One and Two. The jury also found that as a convicted felon, Fields had possessed firearms and ammunition, convicting him of Count Three. The district court sentenced Fields to 216 months in prison and pronounced several special conditions of supervised release. In its written judgment, the court included an additional special condition not mentioned in the oral pronouncement—that Fields must submit to mental health treatment as directed by his probation officer.

## II.

Fields contends that the evidence was insufficient to convict him on any of the three counts. He timely moved for a judgment of acquittal, properly preserving his challenge, so we review *de novo*. *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020). "In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). Moreover, "[w]e do not reevaluate the weight of the evidence or . . . the credibility of the witnesses." *United States v. Bowens*, 907 F.3d 347, 350 (5th Cir. 2018) (internal quotation marks omitted) (ellipsis in original). Furthermore, "[t]he standard of review is the same . . . whether the evidence is direct or circumstantial." *United States v. Burton*, 126 F.3d 666, 670 (5th Cir. 1997). Finally, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence; the jury is free to choose among reasonable constructions of the evidence." *United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994) (citations omitted).

## III.

On Count One, a violation of 18 U.S.C. § 922(a)(6), "the government must show that the defendant[] knowingly made false statements and that such statements were intended to deceive or likely to deceive a federally licensed firearms dealer with respect to any fact material to the lawfulness of the sale." *United States v. Ortiz-Loya*, 777 F.2d 973, 979 (5th Cir. 1985). Regarding Count Two, a violation of 18 U.S.C. 924(a)(1)(A), the government must prove that "(1) the dealer was a federally licensed firearms dealer at the time the events occurred; (2) the defendant made a false statement or repre-

sentation in a record that the licensed firearms dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of its falsity." *United States v. Pena*, 541 F. App'x 453, 455 (5th Cir. 2013) (quoting *United States v. Abramski*, 706 F.3d 307, 316–17 (4th Cir. 2013), *aff'd*, 573 U.S. 169 (2014)). Relatedly, a conviction under 18 U.S.C. § 2 for aiding and abetting "requires the government to establish that the defendant willfully associated himself in some way with the criminal venture and willfully participated in it as he would in something he wished to bring about." *Ortiz-Loya*, 777 F.2d at 980. Furthermore, under § 2, a person "who 'aids' and 'abets' an offense against the United States is liable as a principal." *Bowens*, 907 F.3d at 351. Because the same evidence pertains directly to the first two counts, we discuss them together.

If Fields assisted Polley in making a straw purchase, that assistance would satisfy the elements of both counts. Indeed, an untruthful answer on a Form 4473 violates both relevant statutes.

First, intentionally providing a false answer regarding the actual purchaser violates § 922(a)(6) as a materially false statement intended to deceive the dealer. *See United States v. Ortiz*, 318 F.3d 1030, 1038–39 (11th Cir. 2003) (per curiam). Second, giving such an answer violates § 924(a)(1)(A) because it constitutes a false statement with respect to information that a firearms dealer must retain in his records. *See Pena*, 541 F. App'x at 455. Third, to effect a straw purchase, it is unnecessary that a defendant expressly know that a straw purchaser must falsify specific portions of a Form 4473. *United States v. Soto*, 539 F.3d 191, 195 (3d Cir. 2008). Indeed, to find that a defendant aided and abetted a violation of § 924(a)(1)(A), it is "enough that [the defendant] encouraged [the straw purchaser] to represent herself as the 'actual buyer' and that, in order to do so, she was required to lie" on the Form 4473. *United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013). Thus, the only questions are whether Polley bought the firearm for herself, and, if

No. 19-10639

not, whether Fields aided and abetted the unlawful transaction.

Fields contends that the evidence is insufficient to support his conviction because the government failed to show that he engaged in any affirmative conduct. Fields is correct that aiding and abetting requires "shared . . . criminal intent" and "some affirmative conduct" by the defendant in support of the criminal act. *United States v. Colwell*, 764 F.2d 1070, 1072 (5th Cir. 1985). Furthermore, "[t]he intent necessary to support a conviction can be demonstrated by direct or circumstantial evidence that allows an inference of an unlawful intent, and not every hypothesis of innocence need be excluded." *United States v. Aggarwal*, 17 F.3d 737, 740 (5th Cir. 1994).

Fields contends that the government failed to prove that he engaged in any affirmative conduct, asserting that the best pieces of evidence the government produced were the text messages between Polley and Fields while she was in the firearms dealership. Although Fields posits that the text messages merely demonstrate that he was curious about Polley's whereabouts, he fails to address several other pieces of evidence suggesting the transaction was a straw purchase that Fields aided and abetted. Indeed, such evidence includes his driving Polley to and from the dealership,[1] the pair's staggered entrance and exit of the store, Fields's not indicating that he knew Polley while in the store,[2] the salesman's testimony that he was surprised by Polley's insistence on buying a specific high-powered pistol despite her stated purposes in purchasing a firearm,[3] and the salesman's testimony that, on

---

[1] *See Soto*, 539 F.3d at 195 (finding that defendant's escorting a buyer to a firearms dealership was evidence of participation in a straw purchase).

[2] *See id.* (noting that defendant's presence during a firearms sale was evidence of participation in a straw purchase).

[3] *See United States v. Howell*, 37 F.3d 1197, 1202 (7th Cir. 1994) (concluding that the purchase of a firearm that was ill-suited for the buyer was evidence of a straw purchase).

viewing a recording of Fields in the store, the transaction looked like a typical straw purchase.

Viewed in the light most favorable to the verdict, the evidence is more than sufficient for a jury to find, beyond a reasonable doubt, that Fields was guilty of aiding and abetting Polley in a straw purchase and thereby providing false information on the Form 4473. Therefore, we affirm the conviction as to Counts One and Two.

## IV.

The jury convicted Fields of possession of a firearm by a convicted felon—the FN 5.7 pistol and its ammunition found in the hotel room and the AK-47 style pistol found in the car (Count Three). To convict under 18 U.S.C. § 922(g)(1), the government must prove three elements: "(1) [T]he defendant was previously convicted of a felony, (2) the defendant knowingly possessed a firearm, and (3) the firearm traveled in or affected interstate commerce." *Huntsberry*, 956 F.3d at 279.

The parties stipulated that Fields was previously convicted of a felony and that the firearms and ammunition in question traveled in or affected interstate commerce, leaving only the second element in dispute. Though Fields was indicted for possessing two firearms and the box of ammunition, the simultaneous possession of multiple firearms is treated as a single offense under § 922(g)(1). *United States v. Talbert*, 501 F.3d 449, 450 (5th Cir. 2007). Furthermore, when a defendant is accused of simultaneously possessing multiple firearms under the statute, a jury need not unanimously find that he possessed a specific firearm but only that he possessed a firearm. *Id.* at 451–52. Therefore, in assessing sufficiency on Count Three, it is necessary to determine only whether a reasonable jury could have found that he possessed one of the two firearms or the ammunition.

Possession under § 922(g)(1) "may be actual or constructive" and

"may be proved by circumstantial evidence." *Huntsberry*, 956 F.3d at 279. Actual possession occurs when a "defendant knowingly has direct physical control over a thing at a given time." *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998). Constructive possession is "ownership, dominion or control over a thing, or control over the premises where the thing is found." *Id.*

Fields contends that there was insufficient evidence of possessing the firearms and ammunition. He asserts that because he and Polley were both in the hotel room and had ridden together in the car, his case is one of joint occupancy. Fields correctly states that in joint-occupancy cases, the government must prove more than that a defendant had "mere control or dominion over the place" where contraband is found. *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993). Indeed, "something else (e.g., some circumstantial indicium of possession) is required besides mere joint occupancy before constructive possession is established." *Id.* In joint-occupancy cases, we "employ a common sense, fact-specific approach" to determine whether a defendant had constructive possession. *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994).

The government produced sufficient evidence that Fields possessed the firearms and ammunition. In joint-occupancy cases, we have reasoned that when police discover contraband in plain view within an area that a defendant controls, there is sufficient evidence for a rational jury to find that he had constructive possession. *See, e.g.*, *United States v. McKnight*, 953 F.2d 898, 902 (5th Cir. 1992). The hotel room where police discovered the FN 5.7 pistol and ammunition was registered to Fields; thus, he exercised control over the room. The box of ammunition was in plain view on a desk, and the pistol was hidden in a bag inside the room. That evidence is sufficient for a jury to find that Fields had constructive possession of the ammunition. That the ammunition was on the desk along with both Fields's and Polley's pos-

sessions is strong evidence that Fields also "knew of and had access to" the nearby firearm. *United States v. Bui*, 281 F. App'x 381, 382 (5th Cir. 2008) (per curiam).

Moreover, the pistol had a round in the chamber with the safety off, providing evidence that that weapon had quickly been placed into the bag and covered with clothes for hiding. A rational jury could infer that the pistol had been in plain view until the police knocked on the door, after which the firearm was quickly hidden. Thus, the evidence was sufficient for a reasonable jury to find that Fields had constructive possession of the ammunition and FN 5.7 pistol.

Fields contends that the evidence is insufficient to find that he possessed the AK-47 style pistol in the car. He points out that the car was not registered in his name, and the clothes on and near the weapon were predominantly women's attire. He also notes that the police did not present DNA or fingerprint evidence linking him to the firearm, nor was the gun registered to him.

A reasonable jury, however, could still infer that the car was under Fields's control. Fields initially told police that a friend had dropped him off at the hotel. When officers confronted him about the car key on the desk, Fields changed his story, admitting the car belonged to a friend and conceding that he and Polley had traveled to the hotel in it. Fields then consented to a search of the car and advised police that they must manually unlock it, as the key's electronic feature did not work.

Both the fact that Fields consented to the search and his knowledge of the key's idiosyncratic functionality suggest that he had control over the vehicle. Inside the car, the firearm was in plain view; though it was partially covered by clothing, police could see the pistol from outside the car. Because the firearm was in plain view, as with the ammunition inside the hotel, a

reasonable jury could find that Fields had constructive possession of it. *See McKnight*, 953 F.2d at 902.

A reasonable jury could also find Fields's shifting story about the car suspicious and could infer that he knew there was a firearm inside. Indeed, "[e]vasive and erratic behavior may be evidence of guilty knowledge." *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994). Thus, a reasonable jury could find that Fields possessed both weapons and the ammunition. We affirm on Count Three.

V.

Fields asserts that in its written judgment, the district court erroneously included a special condition of supervised release that was not orally pronounced at sentencing and, therefore, the special condition regarding mental health treatment must be removed from the written judgment. The government agrees. "When a defendant had no opportunity to object to special conditions (because they were unmentioned at sentencing), we review for abuse of discretion, and any 'unpronounced' special conditions must, upon remand, be stricken from the written judgment." *United States v. Rivas-Estrada*, 906 F.3d 346, 348 (5th Cir. 2018). *See United States v. Diggles*, 957 F.3d 551, 559–60 (5th Cir. 2020) (en banc). Fields had no chance to object to the special condition of receiving mental health treatment services at the direction of his probation officer, a condition that includes taking any medications prescribed. The special condition was not included in the oral pronouncement and was omitted from the Presentence Report and its Addendum. It necessarily follows that that special condition must be stricken.

The judgment of conviction is AFFIRMED. The judgment of sentence is VACATED in part and REMANDED for amendment of the written judgment by removing the unpronounced special condition.