# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2024

Lyle W. Cayce
Clerk

No. 24-40069

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Johnell Lavell Barber, II,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CR-384-1

_____

Before Ho, Engelhardt, and Douglas, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

Johnell Lavell Barber opened fire on two passing vehicles, striking Eric Escalara in the arm and his ten-year-old daughter in the head. Barber was subsequently convicted of felony possession of a firearm under 18 U.S.C. § 922(g)(1). On appeal, he challenges his conviction on three grounds: (1) his wife did not validly consent to the search of her home, so any evidence obtained from that search should have been suppressed; (2) § 922(g)(1) is facially unconstitutional under the Second Amendment; and (3) there was insufficient evidence to support his conviction. We disagree on all three grounds and thus affirm.

No. 24-40069

## I.

Police officers arrested Barber at his wife Shiffon Wilson's home after gunfire from the residence struck two vehicles. The shots rendered the first vehicle inoperable, and its passengers fled uninjured. The passengers in the second vehicle were not so fortunate: Eric Escalara was shot in the elbow, and his ten-year-old daughter was shot in the head.

The police identified Wilson's home as the source of the gunfire. Officers asked Wilson for her consent to search her home for the firearm, but she refused. So the officers conducted a protective sweep of the home. They found Barber hiding in a back bedroom.

A check for outstanding warrants revealed that Barber was wanted in Missouri. So the officers arrested him. Texas Ranger Brad Oliver swabbed Barber's hands for gunshot residue before taking him into custody.

Several hours after conducting the initial sweep, Ranger Oliver again asked Wilson for consent to search the home. Police officers explained that a young girl had been shot, and that the gun that was used in the shooting was still missing. The officers also explained how verbal consent worked, and emphasized that she could revoke consent at any time. Wilson eventually consented.

The subsequent search was fruitful. Officers discovered several firearms, including an AR-15, as well as ammunition within a vehicle in the garage. Officers also found spent .223 caliber cartridges dumped outside the house. Barber was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Before trial, Barber moved to suppress the evidence recovered from the searches of Wilson's home, alleging that the searches violated the Fourth and Fourteenth Amendments. At the suppression hearing, the government

2

presented eyewitness testimony and bodycam footage of investigators' interactions with Wilson. Investigators said that they explained how verbal consent worked and told Wilson that she could revoke it at any time. They also said that they told her that a ten-year-old girl had been shot and explained the need to locate the gun. The court denied Barber's motion to suppress.

At trial, several witnesses testified against Barber. Eyewitnesses testified that they had seen the AR-15 found in the garage lying on a couch with Barber on the night of the shooting. Eyewitnesses also testified that they had removed the .223 casings from the home. Other witnesses said that the AR-15 was manufactured in Minnesota, then bought in Missouri, and that it had reportedly disappeared from a home at which Barber was staying at the time. They also said that by the time they spoke to Barber about it, he was living in Texas, and that he had never returned it.

A forensic investigator testified that Barber's DNA was found all over the AR-15, exceeding all other profiles found on the weapon. Another forensic scientist said that gunshot residue was found on Barber's hands, indicating that he had "recently fired a weapon, was in immediate proximity to a weapon when it was fired, or came into contact with a surface containing gunshot primer residue." The parties stipulated that Barber knew that he had a prior felony conviction.

The jury found Barber guilty, and the district court sentenced him to 120 months imprisonment. Barber timely appealed.

## II.

Barber presents three challenges to his conviction. First, he argues that Wilson never consented to a search of the home, so the district court should have suppressed the evidence obtained from the search. Second, he argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional under the

Second Amendment. Third, he argues that there was insufficient evidence to support his conviction. We disagree on all three grounds.

## A.

To begin with, Barber argues that the police lacked consent to search the home because Wilson's consent was involuntary. He theorizes that Wilson's consent was secured through "subtle coercion."

"When a challenge to the denial of a motion to suppress is made, we review legal determinations *de novo* and factual findings for clear error." *United States v. Alkheqani*, 78 F.4th 707, 715 (5th Cir. 2023). "We review the evidence in the light most favorable to the party who prevailed in district court," and the district court's ruling "will be upheld if there is any reasonable view of the evidence to support doing so." *Id*.

We use a six-factor test to determine whether consent was voluntary in this context. These factors are: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United States v. Soriano*, 976 F.3d 450, 455 (5th Cir. 2020). Although all six factors are relevant, no single factor is dispositive. *See*, *e.g.*, *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).

Barber focuses his challenge on factors two and four.

First, he argues that the police used subtle coercion to gain consent. He points to three facts to support his position: Wilson saw Barber's arrest; investigators told her that a ten-year-old child had been shot and might die;

and officers obtained consent several hours after an initial request was rejected.

To be sure, police may not obtain consent as "the product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). But that did not happen here.

Nothing in the record suggests that police officers weaponized Barber's arrest against Wilson. Officers did not threaten arrest or take any other action against Barber to secure Wilson's consent. To the contrary, they engaged in respectful dialogue with Wilson and explained the situation to her. Investigators testified that they would have stopped talking to Wilson and sought a search warrant had she denied consent.

Nor are we troubled that the officers informed Wilson that a ten-year-old girl had been shot and that the girl might die. There's nothing wrong with police officers truthfully informing citizens about ongoing dangers. Moreover, it was Wilson who took the initiative to ask the officers what was going on. The officers simply responded by telling her what had happened and what they were looking for. At no point did investigators ever use this information to threaten or blame Wilson. They simply told Wilson that the shooting of the ten-year-old girl was their reason for wanting to search the home. Transparency is not coercion.

Finally, it was not coercive to ask Wilson for her consent several hours after she had initially refused. To the contrary, we have held that asking for consent "undercuts the argument that the police were coercive." *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998).

In sum, law enforcement did not use subtle coercion to obtain Wilson's consent.

Next, Barber argues that Wilson's statements to police that she didn't know what was happening show she lacked the awareness to consent. But officers informed Wilson of her right to consent, and Barber does not contend otherwise. Ranger Oliver testified that, throughout his interactions with Wilson, he continued to explain consent to Wilson—including that she didn't have to consent, and that she could revoke her consent at any time. *See Alkheqani*, 78 F.4th at 721 (finding circumstances weighed in favor of voluntary consent when defendant "concede[d] that he was told several times he did not have to consent and that his consent could be withdrawn").

As for the remaining factors, Barber concedes that Wilson was never in custody nor threatened with arrest. Wilson was "fairly cooperative with the police" throughout the encounter, and at no point attempted to terminate dialogue with law enforcement. Nothing in the record shows that Wilson lacks education or intelligence. And Barber concedes that the record is silent about "whether she had a belief about the presence of incriminating evidence" in the home.

Based on the totality of the circumstances, we hold that Wilson voluntarily consented to the search of her home.

**B.**

Next, Barber claims that the district court should have dismissed his charge because 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment. *See, e.g.*, *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022).

To date, the Supreme Court has not addressed the constitutionality of § 922(g)(1). But the Court has repeatedly emphasized that laws disarming felons are "presumptively lawful." *Dist. of Columbia v. Heller*, 554 U.S. 570, 626–27, 627 n.26 (2008). *See also United States v. Rahimi*, 602 U.S. 680, 699 (2024) (same).

6

Our court recently upheld 18 U.S.C. § 922(g)(1) against facial challenge. *See United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024); *see also United States v. French*, 121 F.4th 538, 538 (5th Cir. 2024). Barber presents no plausible basis for distinguishing *Diaz*. His Second Amendment defense accordingly fails.

## C.

Finally, Barber argues that there was insufficient evidence to support his conviction. He properly preserved this claim. We review the sufficiency of evidence *de novo*, but view the evidence in the light most favorable to the verdict. *See United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018).

To prove guilt under § 922(g)(1), the government must establish four elements beyond a reasonable doubt: (1) the defendant had previously been convicted of a felony; (2) the defendant knowingly possessed a firearm; (3) that the firearm traveled in or affected interstate commerce; and (4) that the defendant knew his status as a felon when he possessed the firearm. *United States v. Ortiz*, 927 F.3d 868, 874 (5th Cir. 2019); *United States v. Huntsberry*, 956 F.3d 270, 281 (5th Cir. 2020) (citing *Rehaif v. United States*, 588 U.S. 225, 227 (2019)). Barber concedes elements one and four. He only contests the second and third elements.

We begin with the second element. Possession of a firearm "may be actual or constructive." *United States v. Fields*, 977 F.3d 358, 365 (5th Cir. 2020) (citation omitted). A defendant has actual possession when they "knowingly [have] direct physical control over a thing at a given time." *Id.* A defendant usually has constructive possession through "ownership, dominion, or control over the contraband itself, *or* dominion or control over the premises in which the contraband is found." *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991). When two or more persons occupy the space where contraband is found, the government must have "some evidence

supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993) (citation omitted). This inquiry is fact-specific and driven by common sense. *See United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994).

Here, the government presented evidence of both actual and constructive possession. For example, it presented evidence that the original owner purchased the AR-15 in Missouri, that she kept it in the home where Barber lived, that it disappeared, and then that it reappeared with Barber in Texas, indicating that Barber had actual physical possession of the AR-15. Witnesses testified that they saw the firearm on the couch by Barber on the night of the shooting, and that they disposed of spent .223 caliber casings outside the home. The jury heard evidence that gunshot residue was found on Barber's hands on the night of the shooting, indicating that he had either recently fired a weapon, was near one when it was fired, or had contact with residue. Finally, witnesses said that Barber's DNA was found all over the firearm, surpassing all other subjects detected in quantity. Viewing all of the evidence in the light most favorable to the government, a reasonable jury could have concluded that Barber had actual or constructive possession of the firearm.

The third element is satisfied if the firearm has "a past connection to interstate commerce." *United States v. Penn*, 969 F.3d 450, 459 (5th Cir. 2020). Barber admits that the AR-15 was manufactured in Minnesota, sold in Missouri, and ended up in Texas. He nevertheless insists that "[t]he effect that this singular transaction had on interstate commerce was minimal," and that "[t]he government produced no evidence whatsoever that interstate commerce was affected at all, much less in any substantial way."

No. 24-40069

But Barber acknowledges that his argument conflicts with our precedent. We have repeatedly held that the "in or affecting commerce element is satisfied if the firearm had a past connection to interstate commerce." *Penn*, 969 F.3d at 459. (citation omitted); *see also United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993). And we have repeatedly held that possession of a firearm manufactured in a different state or country is sufficient. *See United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002). Barber possessed a firearm that was manufactured and purchased in two other states. So we hold that the government met its burden on the third element as well as the second.

\* \* \*

We affirm.