**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 09-2681


UNITED STATES OF AMERICA


v.


DOMINGO MERCADO,
Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:08-cr-00541-003)
District Judge:  Honorable Jan E. Dubois


Argued on June 2, 2010


Before: AMBRO, CHAGARES, and VAN ANTWERPEN,
Circuit Judges.


(Filed     July 7, 2010 )


Laurence A. Narcisi III, Esq. (Argued)
100 South Broad Street Suite 1910

Land Title Building
Philadelphia, PA 19110

      *Counsel for Appellant*

Guy R. Sciolla, Esq.
100 South Broad Street Suite 1910
Land Title Building
Philadelphia, PA 19110

      *Counsel for Appellant*

Maureen McCartney, Esq.
Office of the United States Attorney
615 Chestnut Street Suite 1250
Philadelphia, PA 19106

      *Counsel for Appellee*

Tomika N. Stevens, Esq. (Argued)
Office of the United States Attorney
615 Chestnut Street Suite 1250
Philadelphia, PA 19106

      *Counsel for Appellee*

OPINION OF THE COURT

2

VAN ANTWERPEN, *Circuit Judge*.

Domingo Mercado ("Mercado") appeals the District Court's order denying his motion for judgment of acquittal. Because we find the evidence was sufficient to support the verdict, we will affirm the District Court's order.

**I.**

On September 10, 2008, a grand jury indicted Mercado and his two co-defendants Dionel Rodriguez-Nunez ("Rodriguez-Nunez") and Hiram Coira-Soto, otherwise known as Morrisette ("Morrisette") on one count of possession with intent to distribute 100 grams or more of heroin, and aiding and abetting the possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The grand jury also indicted them on one count of possession with intent to distribute, and aiding and abetting the possession with intent to distribute, within 1000 feet of a school, in violation of 21 U.S.C. § 860(a). Rodriguez-Nunez pled guilty to both counts pursuant to a cooperation plea agreement. Morrisette was scheduled to plead guilty on February 5, 2009, but instead absconded. Mercado proceeded alone to trial on February 17, 2009.

At trial, the Government presented evidence that the Drug Enforcement Agency ("DEA") had been working with a confidential informant, whom Rodriguez-Nunez knew as Poppy. On two occasions prior to the charges in question, Poppy completed controlled substance purchases from Rodriguez-Nunez. On August 13, 2008, at 11:00 a.m., DEA

3

agents instructed Poppy to contact Rodriguez-Nunez and request 250 grams of heroin. Rodriguez-Nunez told Poppy he did not have that much heroin but would travel to New York City to pick some up and call Poppy when he returned.

Rodriguez-Nunez, however, did not go to New York City. Instead, he contacted Morrisette about getting heroin to sell to Poppy. Rodriguez-Nunez testified that he had never done business with Morrisette before, but believed that Morrisette could provide for his customer's needs.

On August 14, 2008, starting at 7:00 a.m., DEA agents set up surveillance at the 200 block of East Allegheny Avenue across the street from Rodriguez-Nunez's residence. Rodriguez-Nunez left his house at approximately 11:00 a.m. He made one stop and then arrived at a barber shop located at the intersection of Front and Lippincott in Philadelphia at 11:40 a.m., less than three blocks from his house. Rodriguez-Nunez stayed in the area around the barber shop for most of the afternoon, talking to numerous people.

Although DEA agents did not observe Rodriguez-Nunez talking with Morrisette or Mercado in front of the barber shop, Rodriguez-Nunez testified that he talked to them twice throughout the day. He said Morrisette pulled up in a black Ford Taurus sometime before noon.[1] Mercado sat in the passenger seat. Rodriguez-Nunez stood outside the passenger-side window of the car and spoke with Morrisette about purchasing heroin. Then, Morrisette and Mercado drove away. A short time later, Morrisette dropped by the

---

[1] The black Ford Taurus was registered to Coira-Soto, a/k/a Morrisette.

barber shop again with Mercado in the passenger seat.[2]  This time, Morrisette was driving a maroon GMC Envoy registered in his name.  Standing on the street and speaking to Morrisette through the passenger-side window, Rodriguez-Nunez and Morrisette further discussed which drugs Morrisette had available to sell to Rodriguez-Nunez.

Rodriguez-Nunez testified that he and Morrisette exchanged several calls over cellular phones throughout the day.  Originally, Rodriguez-Nunez agreed to pay $62 for each gram of heroin, but in a later call he asked Morrisette if he could decrease the price to $60 per gram.  Morrisette responded by saying he would "patch [Rodriguez-Nunez] on with the owner of [the] stuff."  (J.A. 115.)  Immediately thereafter, a new voice spoke into the phone and confirmed that the price was $62 a gram.  Neither Morrisette nor the "owner" ever identified the new voice by name.

Another confidential informant called Rodriguez-Nunez between 4:30 p.m. and 5:00 p.m. to ask if Rodriguez-Nunez had succeeded in acquiring some heroin.  Rodriguez-Nunez responded that he was returning from picking up the heroin and was going to meet with Poppy at the Cousin's Supermarket parking lot across the street from his house.  Based on this information, law enforcement set up surveillance in the supermarket's parking lot.

Poppy and Rodriguez-Nunez met at 5:15 p.m.

---

[2] The evidence did not conclusively establish what time the two meetings took place. (J.A. 188.)  Because we look at the evidence in the light most favorable to the prosecution when assessing a Rule 29 claim, we presume these conversations occurred. *United States v. Cunningham*, 517 F.3d 175, 177 (3d Cir. 2008).

5

Rodriguez-Nunez told Poppy he did not have the heroin yet, but that Poppy should come back in ten minutes. Then Rodriguez-Nunez left the parking lot, briefly stopped by the barber shop, and returned to his residence on Allegheny Avenue. Rodriguez-Nunez waited on his stoop for Morrisette to arrive with the heroin.

Sometime later, Morrisette pulled up in front of Rodriguez-Nunez's house in the black Ford Taurus. Again, Mercado was in the passenger seat. Rodriguez-Nunez walked over to the passenger-side window and reached into the car. Someone handed him a wrapped package of heroin, which he put directly in his pocket. Rodriguez-Nunez testified that he is unsure whether Mercado or Morrisette passed him the package. Surveillance officers were also unable to see which one transferred the package to Rodriguez-Nunez.

Morrisette drove away. Rodriguez-Nunez crossed the street to deliver the package to Poppy, but DEA agents arrested Rodriguez-Nunez before he could. DEA agents took Rodriguez-Nunez inside his residence, executed a search of his house, and recovered the heroin package from his right, rear pocket. Rodriguez-Nunez, through a Spanish interpreter, immediately began cooperating. He told the DEA agents he received the heroin from a man named Morrisette, which he had yet to pay for, and that he was supposed to call when he had the money.

At the DEA agents' direction, Rodriguez-Nunez called Morrisette at 6:20 p.m. and told him to come pick up the money. A short while later, Morrisette and Mercado drove up, this time in the maroon GMC Envoy. The DEA agents arrested both Morrisette and Mercado.

Rodriguez-Nunez testified that although he saw Mercado with Morrisette every time he saw Morrisette that

6

day, he never conversed with Mercado. When asked if Mercado had anything to do with the drugs, Rodriguez-Nunez stated, "I wasn't dealing with that man. Whatever they did among themselves, you know, Morrisette's the one that knows. It's their business." (J.A. 139.)

Agent Poules testified that after DEA agents arrested Rodriguez-Nunez, Morrisette, and Mercado, he confiscated their cellular phones. The phone he took from Rodriguez-Nunez was registered to the same number Poppy used to call Rodriguez-Nunez. The number for Morrisette's phone was consistent with the number Rodriguez-Nunez dialed to request that Morrisette pick up the money. Agent Poules also retrieved Mercado's phone and subpoenaed the toll records relating to the three phones.

The toll records revealed that the phones registered to the parties exchanged several phone calls on August 14, 2008 before 11:00 a.m. Of course the toll records do not show that the parties themselves made these calls. Relevant to this case, however, is the fact Rodriguez-Nunez's phone called Morrisette's phone two times that morning, both resulting in short voice messages. Of particular note is the fact that before Morrisette responded to Rodriguez-Nunez, three short calls were placed between Morrisette's phone and Mercado's phone. Only after those calls were made did Morrisette respond to Rodriguez-Nunez's call.[3] There were no phone

---

[3] Specifically, Rodriguez-Nunez's phone called Morrisette's phone at 10:09 a.m., and left a four-second voice mail. Subsequently, Morrisette's phone placed a thirty-second call to Mercado's phone at 10:11 a.m. Rodriguez-Nunez's phone called Morrisette's phone again at 10:27 a.m., leaving another four-second voice mail.

Mercado's phone put in a nineteen-second call to

7

calls between Mercado and Rodriguez-Nunez – only between Mercado and Morrisette and Morrisette and Rodriguez-Nunez.

The Government's case also included three stipulations: the package recovered contained heroin, the distance between the parking lot and the school is less than 1000 feet, and law enforcement maintained the proper chain of custody for documents recovered until the point the documents were introduced into evidence.

Mercado moved for a Rule 29 judgment of acquittal after the Government presented all of its evidence, save one witness. The District Court listened to brief arguments on the motion, but deferred the ruling until after the jury verdict. The jury convicted Mercado on both counts.

After the jury verdict, the District Court asked counsel to reargue the motion, focusing their Rule 29 arguments on Mercado's potential liability as an aider or abettor or via constructive possession. It stated:

---

Morrisette's phone at 10:31 a.m., and then an eighteen-second call to Morrisette's phone at 10:39 a.m. Immediately thereafter, Morrisette's phone initiated a call with Rodriguez-Nunez's phone that lasted two minutes. The last communication between Mercado's phone and Morrisette's phone was initiated by Mercado's phone at 11:00 a.m. Mercado's phone left an eight-second voice mail on Morrisette's phone.

It's no secret that I disagree with the jury verdict in this case. I'm not saying that the defendant is not guilty. . . . I think looking hard at the meaning of "reasonable doubt," . . . if I had been sitting as a juror, I would have voted for a verdict of not guilty. But that's not the test. My disagreement with the jury verdict doesn't carry the day for the Defense, and yet I'm driven to this conclusion. By the Government's argument, I think the fact that the defendant was present four times takes this case out of the rule that mere presence, where the drugs are being delivered, and mere presence in the car in which they're being delivered, is not enough. Mere presence once, yes. Mere presence four times, I say no. That prevents me from saying that no rational trier of the fact could find the defendant guilty beyond a reasonable doubt.

(J.A. 268-69.) Thus, the District Court denied the motion for judgment of acquittal.

## II.

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We apply a particularly deferential standard when determining if a jury verdict rests on sufficient evidence, because a reviewing court "'must be ever vigilant . . . not to

9

usurp the role of the jury by weighing credibility and assigning weight to the evidence.'" *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). Therefore, we view the evidence in the light most favorable to the prosecution and sustain the verdict unless it is clear that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Cunningham*, 517 F.3d 175, 177 (3d Cir. 2008). Thus, an insufficiency of the evidence claim places a heavy burden on the appellant because we will only find the evidence insufficient when the prosecution's failure is clear. *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008); *Brodie*, 403 F.3d at 133. The prosecution may satisfy its burden entirely through circumstantial evidence. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).[4]

## III.

---

[4] We exercise de novo review over a district court's denial of a Rule 29 motion, but are obliged to apply the same deferential standard as the District Court. *United States v. Introcaso*, 506 F.3d 260, 264 n.2 (3d Cir. 2007); *Bobb*, 471 F.3d at 494. Because the District Court reserved judgment on the Rule 29 motion near the end of the Government's case-in-chief, it was required to decide the motion on the basis of the evidence presented when the ruling was reserved. Fed. R. Crim. P. 29(b).

10

Mercado does not dispute that he had full knowledge that Morrisette was engaging in the substantive crime of possession and distribution of a controlled substance.[5] He claims, however, that the Government offered insufficient evidence from which a reasonable juror could infer that he in some way aided or facilitated in the crime. Instead, he contends the evidence establishes he was merely a passive spectator.

The relevant inquiry on appeal is whether any reasonable juror could find that Mercado facilitated the drug transaction between Morrisette and Rodriguez-Nunez.[6] One

---

[5] Mercado suggests, both in his briefs and at oral argument, that evidence of his repeated presence during an on-going drug transaction is insufficient to support an aiding and abetting conviction when compared to our jurisprudence in a line of cases dealing with knowledge. We have been reluctant to uphold drug conspiracy convictions unless the Government introduces evidence from which the jury could infer the defendant knew the particular illegal objective of the conspiracy, as opposed to knowing merely that the objective was illegal. *See Boria*, 592 F.3d at 481-85 (discussing collective cases on this issue). This precedent is inapposite here because there was ample evidence, and Mercado does not dispute, that he had knowledge that Morrisette possessed, and distributed, heroin.

[6] Because the Government did not present any direct evidence that Mercado possessed, controlled, or even touched any heroin the jury had to believe Mercado aided and abetted

who aids and abets the possession, manufacture, or distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) is punishable as a principal. 18 U.S.C. § 2(a). One is guilty of aiding and abetting if the government proves: (1) that another committed a substantive offense; and (2) the one charged with aiding and abetting knew of the commission of the substantive offense and acted to facilitate it. *United States v. Cartwright*, 359 F.3d 281, 287 (3d Cir. 2004). Additionally, we require proof that the defendant had the specific intent to facilitate the crime. *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999). One can aid or abet another through use of words or actions to promote the success of the illegal venture. *United States v. Xavier*, 2 F.3d 1281, 1288 (3d Cir. 1993).

---

Morrisette's possession and distribution of heroin; or that Mercado constructively possessed the heroin, in order to convict him. *See Cunningham*, 517 F.3d at 178. We, however, address only aiding and abetting liability in this opinion. (The parties focused on aiding and abetting liability in their briefs. Moreover, at oral argument, the Assistant United States Attorney asserted that aiding and abetting liability was a stronger theory in this case.)

Because the verdict must be upheld if a reasonable juror could have found the essential elements of the crime under either theory, and we find liability under the theory of aiding and abetting, we need not address in the alternative constructive possession liability. *Id.* at 177.

12

We have emphasized that "facilitation" for aiding and abetting purposes is "'more than associat[ion] with individuals involved in the criminal venture.'" *Soto*, 539 F.3d at 194 (quoting *United States v. Dixon*, 658 F.2d 181, 189 (3d Cir. 1981)). Rather, the defendant must "participate in" the criminal enterprise. *Id.* Neither mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a conviction. *Id.* Thus, to convict for aiding and abetting, the Government must prove the defendant associated himself with the venture and sought by his actions to make it succeed. *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997). The Government need only show some affirmative participation which, at least, encourages the principal offender to commit the offense. *United States v. Frorup*, 963 F.2d 41, 43 (3d Cir. 1992). An aiding and abetting conviction can be supported solely with circumstantial evidence as long as there is a "'logical and convincing connection between the facts established and the conclusion inferred.'" *Soto*, 539 F.3d at 194 (quoting *Cartwright*, 359 F.3d at 287).

The evidence produced at trial revealed that Mercado accompanied Morrisette as a passenger in his two cars on four occasions during an ongoing drug transaction where Morrisette discussed, delivered, and attempted to receive payment for more than 100 grams of heroin. Additionally, phones registered to Morrisette, Rodriguez-Nunez, and Mercado exchanged calls prior to 11:00 a.m. on August 14, 2008, and Morrisette put Rodriguez-Nunez on the phone with the "owner" of the heroin, who was in Morrisette's immediate proximity.

13

There is no direct evidence that Mercado aided or encouraged Morrisette during the ongoing drug transaction. The Government, however, maintains that a reasonable juror could infer from the circumstantial evidence of Mercado's repeated presence in Morrisette's car, and the pattern of the phone calls, that Mercado aided and abetted Morrisette. *Id*. Specifically, the Government argues that, by switching cars with Morrisette on three occasions, a reasonable juror could infer Mercado affirmatively acted to help Morrisette frustrate surveillance of the drug transaction. Additionally, because Rodriguez-Nunez testified he received the heroin after reaching into the passenger-side window, a reasonable juror could infer that Mercado handed him the heroin. Finally, the Government asserts that a reasonable juror could infer from the pattern of the calls between Rodriguez-Nunez, Morrisette, and Mercado that Rodriguez-Nunez called Morrisette to "announce that he was available to do the deal; [Morrisette] immediately called Mercado to pass this information along and arrange to acquire the drugs; Mercado made arrangements and then informed [Morrisette]; and, finally, [Morrisette] called Rodriguez-Nunez to tell him the deal was on." (Gov't Br. 29.) At argument, the Government alternatively proposed a reasonable juror could infer Mercado served as Morrisette's "muscle," and accompanied him to ensure the drug sale went smoothly.

Mercado claims there is insufficient evidence to support his conviction by arguing that a reasonable juror is prohibited from inferring anything from the telephone calls under *United States v. Thomas*, 114 F.3d 403 (3d Cir. 1997), and that evidence of Mercado sitting in Morrisette's car

14

merely establishes his presence at the scene of the crime, not his participation in the crime. *Soto*, 539 F.3d at 194. We address each argument in turn.

In *Thomas,* we reversed a jury verdict and judgment convicting Thomas of conspiring to possess cocaine with an intent to distribute. *Thomas*, 114 F.3d at 404. We determined the prosecution failed to prove that Thomas, who in exchange for $500 went into a hotel room to confirm a suitcase was inside, knew the suitcase contained controlled substances.[7] *Id.* at 404-05. The government offered evidence of calls between a co-conspirator's phone and Thomas's home phone, pager, and cellular phone, to establish that Thomas knew the suitcase contained drugs. *Id.* at 405-06. There was no evidence of the calls' contents. We noted the Government's case depended on the jury inferring that the caller informed Thomas that there was cocaine in the suitcase. *Id.* at 406. We determined it was "speculative to conclude that Thomas knew that drugs were involved," and that we could not uphold a jury verdict based on speculation alone. *Id.*

Contrary to Mercado's assertions, *Thomas* does not broadly proscribe jurors from making inferences about phone calls when there is no evidence of their contents. *See id.* It

_____

[7] To support a conspiracy conviction, the Government must establish, among other elements, that the alleged conspirator "'entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment.'" *Thomas*, 114 F.3d at 405 (quoting *Wexler*, 838 F.2d at 91).

15

more narrowly prohibits jurors from inferring that a defendant gained knowledge of the subject of an illegal conspiracy based the existence of a call alone. *Id.* Because Rodriguez-Nunez's testimony provides ample evidence Mercado had knowledge of the ongoing heroin transaction, *Thomas* is distinguishable.

Mercado's claim that evidence of his repeated presence only establishes that he was "merely present" as a passive spectator is unpersuasive. This argument implicates two cases where we reached contrary results. In *United States v. Jenkins*, we determined evidence that (1) a defendant was sitting on a couch in his friend's apartment, (2) in boxer shorts, (3) near to a table supporting three bags of cocaine, established that the defendant was "merely present" at the scene of the crime and was insufficient to support a conviction for aiding and abetting. 90 F.3d 814, 816, 821 (3d Cir. 1996). We found evidence of "[h]is close proximity to the drugs and firearms, state of dress, and acquaintance with Stallings, who committed the principal offense," was insufficient because it did not suggest the defendant associated himself with, or participated in, the drug distribution scheme. *Id.* at 821.

In contrast, in *United States v. Leon*, we affirmed an aiding and abetting conviction where the evidence established: (1) law enforcement spotted the defendant at a rest stop in the vicinity of two co-defendants (who had U-Haul trucks and a tractor trailer under their control) the day before a large quantity of drugs were unloaded; and (2) the following day the defendant was found lying face down on a

16

tugboat after police ordered individuals to freeze a short distance from where a large quantity of drugs had been seen in a "secluded area" on a trailer – the same trailer that was seen at the rest stop the night before. 739 F.2d 885, 892 (3d Cir. 1984). We acknowledged that the defendant's proximity to the location where a large quantity of drugs was unloaded merely established his presence near the drugs, and might be insufficient evidence from which to infer his participation in the drug distribution scheme. *Id.* at 892-93. We concluded, however, that a reasonable juror could infer from the defendant's proximity to where the drugs were unloaded, and his presence near the co-defendants the previous night, "that [the defendant] was not present for some innocuous reason, but was involved in the conspiracy." *Id.* at 893.

Unlike in *Jenkins*, Mercado was not present during the drug transaction on one occasion, but repeatedly. Evidence of *repeated presence* suggests Mercado was not present by accident, but rather participated in and facilitated the drug possession. *See Leon*, 739 F.2d at 893 (concluding a reasonable juror could find a defendant's presence was not innocuous based on evidence that he was present on two occasions); *see also United States v. Paone*, 758 F.2d 774, 776 (1st Cir. 1985) (concluding a jury could reasonably infer a defendant aided and abetted based on his "repeated presence at important junctures of th[e] drug deal"). This is particularly true because Morrisette and Mercado switched cars on three occasions during the day; thus, Mercado got out of one of Morrisette's cars and chose to get into another car on three separate instances to continue accompanying Morrisette at important junctures during a prolonged drug

17

transaction. Evidence of Mercado's presence considered in conjunction with the phone call patterns, which establish Mercado's association with Morrisette, is more evidence than we had before us when we affirmed the jury's conviction in *Leon*. *See Leon*, 739 F.2d at 892.

This is admittedly a close case. We are constrained by a deferential burden that requires us to sustain the jury's verdict unless the prosecution's failure is clear. *Brodie*, 403 F.3d at 133. Although we realize other inferences are possible from the evidence offered, we believe that if the evidence is viewed in the light most favorable to the Government, a reasonable juror could infer that Mercado, at a minimum, encouraged Morrisette to possess and distribute heroin based on his repeated presence in Morrisette's cars and their phone communications. *Frorup*, 963 F.2d at 43; *see United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977) ( "The evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt.") (internal quotation marks and citation omitted). Therefore, we will affirm the judgement. *Soto*, 539 F.3d at 194.

Mercado predicts that affirming his conviction will be tantamount to imposing criminal liability on people who associate with criminals. We disagree. A person cannot be considered an aider and abettor if he or she is present, even under extremely suspicious circumstances, near drugs on one occasion. *Id.*; *Jenkins*, 90 F.3d at 821. Rather, we will only affirm a jury's conviction for aiding and abetting liability if

18

evidence of a defendant's presence, taken in consideration with the totality of the evidence, supports an inference that the defendant acted in a way to progress the crime. *Soto*, 539 F.3d at 194. If such an inference could not be drawn, drug suppliers could regularly monitor their drug distributors and avoid prosecution simply by not handling the product or talking to the buyers.

We hold that a defendant's presence on multiple occasions during critical moments of drug transactions may, when considered in light of the totality of the circumstances, support an inference of the defendant's participation in the criminal activity. Such an inference is appropriate in this case. *See also United States v. Lema*, 909 F.2d 561, 570 (1st Cir. 1990) (affirming a jury conviction for aiding and abetting based on, *inter alia*, evidence that a defendant was present at two separate drug transactions); *Paone*, 758 F.2d at 776.

## VI.

We therefore hold there was sufficient evidence for a jury to find Mercado guilty of aiding and abetting the possession with intent to distribute heroin beyond a reasonable doubt.