**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 12-2894

——————————

UNITED STATES OF AMERICA,

Appellant.

v.

DOMINIGO MERCADO

——————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-08-cr-541-003)
District Judge:  Honorable Jan E. DuBois

——————————————

Argued on May 22, 2013

(Opinion Filed: August 30, 2013)

Before:  RENDELL and GREENAWAY, JR., <u>Circuit Judges</u>
and ROSENTHAL*, <u>District Judge</u>

——————————

*The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

Robert A. Zauzmer, Esquire **(Argued)**
Maureen McCartney, Esquire
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

Counsel for Appellant


Jonathan H. Feinberg, Esquire **(Argued)**
Kairys, Rudovsky, Messing & Feinberg, LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106

Counsel for Appellee

O P I N I O N

**RENDELL**, <u>Circuit Judge</u>:

The Government appeals from the District Court's order granting defendant

Dominigo Mercado's habeas corpus petition under 28 U.S.C. § 2255 and vacating his

conviction on the basis of ineffective assistance of counsel. Because we conclude that

Mercado's trial counsel was not ineffective under our *Strickland* jurisprudence, we will

reverse the judgment of the District Court.

**I.[1]**

The background of this case is set out in detail in *United States v. Mercado*, 610

F.3d 841 (3d Cir. 2010), and we will recount only those facts that are necessary to

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 2255.  We have jurisdiction
pursuant to 28 U.S.C. §§ 1291 and 2253.

address the District Court's reasoning that counsel was ineffective in failing to object to certain trial testimony.

On September 10, 2008, a grand jury indicted Mercado, Dionel Rodriguez-Nunez ("Rodriguez-Nunez") and Hiram Coira-Soto, otherwise known as Morrisette ("Morrisette"), on one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1), and on one count of possession with intent to distribute within 1000 feet of a school, in violation of 21 U.S.C. § 860(a). Mercado proceeded to trial on February 17, 2009.[2]

At trial, the government introduced evidence that the Drug Enforcement Administration ("DEA") was working with a confidential informant, known as Poppy, when on August 13, 2008, Poppy contacted Rodriguez-Nunez to arrange the purchase of 250 grams of heroin. Rodriguez-Nunez, who had sold drugs to Poppy twice before, told Poppy that he did not possess that amount of heroin but that he would get it.

The next day, the DEA set up surveillance at the 200 block of East Allegheny Avenue across the street from Rodriguez-Nunez's residence. Rodriguez-Nunez was observed leaving his home in the morning and he spent most of the afternoon in the vicinity of a barber shop located at the intersection of Front and Lippincott Streets in Philadelphia, less than three blocks from his home. Late in the afternoon of August 14, 2008, Rodriguez-Nunez returned to his home. There, law enforcement observed a black Ford Taurus carrying two people pull up in front of Rodriguez-Nunez's residence.

---

[2] Rodriguez-Nunez agreed to testify against Mercado and pleaded guilty to both counts. Morrisette fled and remains a fugitive.

Rodriguez-Nunez approached the passenger window and was passed a wrapped package containing heroin that he immediately put in his back pocket. The car drove away, and as Rodriguez-Nunez was crossing the street to deliver the package to Poppy, he was apprehended by DEA agents. Rodriguez-Nunez immediately began cooperating and agreed to arrange for the sellers of the drugs to return in order to collect payment from him. A maroon GMC Envoy showed up a while later, driven by Morrisette with Mercado in the passenger seat. The DEA agents arrested Morrisette and Mercado on the spot.

At trial, the government's first witness, Special Agent David Pedrini ("Agent Pedrini"), testified regarding the background of the investigation. He told the jury that agents had observed that two people were present in the Ford Taurus when Rodriguez-Nunez acquired the package of heroin, but that the agents could not identify them. He testified that shortly after Rodriguez-Nunez was arrested, Rodriguez-Nunez told agents that Morrisette and Mercado were the men in the Ford Taurus when he purchased the heroin. According to Agent Pedrini's testimony, Rodriguez-Nunez also told agents that he had met with Morrisette to discuss the drug purchase while Morrisette and Mercado were sitting in the car at Front and Lippincott earlier during the day. Mercado was a passenger in the car, but he did not participate in the conversation. Agent Pedrini testified that law enforcement officers did not observe this earlier meeting.

Rodriguez-Nunez took the stand after Agent Pedrini. His testimony described three meetings with Morrisette on the day of the arrest. At their first meeting, which occurred in the vicinity of the barber shop at Front and Lippincott, Morrisette drove a black Ford Taurus registered in his name and Mercado accompanied him, sitting in the

4

passenger seat. Rodriguez-Nunez stood alongside the passenger-side window of the car and discussed the heroin purchase with Morrisette. A short time later, Morrisette returned to the barber shop again, this time driving a maroon GMC Envoy registered in his name, with Mercado riding in the passenger seat. Again, Rodriguez-Nunez spoke to Morrisette about the deal through the passenger-side window. The third meeting, when Rodriguez-Nunez acquired the heroin and was then arrested, occurred in front of Rodriguez-Nunez's house. Thus, according to Rodriguez-Nunez, Mercado was present on all three occasions. Rodriguez-Nunez was the only one who could provide this information first hand.

Rodriguez-Nunez also testified that he and Morrisette exchanged several cellular phone calls throughout the day. During one call, Rodriguez-Nunez asked Morrisette if he would drop the price of the heroin. Morrisette answered that he would "patch [Rodriguez-Nunez] on with the owner of [the] stuff." *Mercado*, 610 F.3d at 842 (alterations in original). A new and unidentified voice came on the line immediately and informed Morrisette that the price was firm.

Rodriguez-Nunez testified that although Mercado accompanied Morrisette every time he saw Morrisette that day, he never actually conversed with Mercado. For his part, Rodriguez-Nunez also testified that he did not recall who passed him the heroin. When asked if Mercado was involved in the drug sale, Rodriguez-Nunez replied, "I wasn't dealing with that man." *Id*. at 844.

Additionally, the government introduced evidence that the phone confiscated from Rodriguez-Nunez upon his arrest was registered to the same number Poppy used to call Rodriguez-Nunez. Agents also confiscated Morrisette's and Mercado's phones. The

5

number Rodriguez-Nunez dialed in order to arrange for Morrisette to pick up the money matched the number of the phone confiscated from Morrisette.

Toll records for the three confiscated phones reveal that Rodriguez-Nunez's phone called Morrisette's phone two times on the morning of August 14th, both resulting in short voice messages. "[B]efore Morrisette['s phone] responded to Rodriguez-Nunez['s phone], three short calls were placed between Morrisette's phone and Mercado's phone," only then did Morrisette's phone call Rodriguez-Nunez's phone. *Id.* Additionally, the records show that "[t]here were no phone calls between Mercado and Rodriguez-Nunez—only between Mercado and Morrisette and Morrisette and Rodriguez-Nunez." *Id.*[3]

Defense counsel argued to the jury that the evidence showed only that Mercado was present at the time of the drug sale, and that the testimony was clear that while he was in the car with Morrisette, Mercado engaged in no conduct that would implicate him in the crime. The jury was instructed as to the elements of the offenses, as well as regarding conspiracy and aiding and abetting. The jury convicted Mercado on both counts. Following the verdict, defense counsel made an oral motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29. Although noting that he would have voted for an acquittal if he had been on the jury, the District Court Judge denied the motion primarily because he concluded that Mercado's presence in the car on four occasions (including the last time when he was arrested) put the case outside the rule that

---

[3] As we note below, we need not explore the prejudice prong of the *Strickland* standard. However, we note that the District Court did not consider the impact of these phone calls on the jury as it related to the possible outcome of the case.

6

mere presence during a drug transaction is not enough to establish participation. On appeal, we also noted the closeness of the case, but affirmed because "a defendant's presence on multiple occasions during critical moments of drug transactions may, when considered in light of the totality of the circumstances, support an inference of the defendant's participation in the criminal activity." *Id*. at 849.

Mercado then filed a motion for habeas corpus relief under 28 U.S.C. § 2255 to vacate his sentence. He argued that his trial counsel was ineffective for failing to object to the portions of Agent Pedrini's testimony recounting what Rodriguez-Nunez had said to him immediately following his arrest regarding his meetings with Mercado and Morrisette.

The District Court held an evidentiary hearing at which Mercado's trial counsel testified that he did not object to the evidence because he viewed it as bolstering his theory of the case. He testified that he had pursued a strategy that mere presence was not enough and that because Mercado simply rode along during the day and was not involved in the drug deal, the jury could not convict him. Counsel specifically asked Agent Pedrini, "Did . . . Rodriguez-Nunez ever tell you he ever had a conversation with . . . Mercado?" to which Agent Pedrini replied that he did not. (App. 79). Agent Pedrini's testimony supported counsel's theory because it established that even at the time of Rodriguez-Nunez's arrest, when his incentive to cooperate and implicate Mercado was at its zenith, he did not directly implicate Mercado in any illegal activity.

The District Court Judge concluded that the evidence was hearsay and that counsel was ineffective for failing to object to its admission. He held that defense counsel's

7

strategy was unreasonable because it allowed Agent Pedrini's testimony to corroborate that Rodriguez-Nunez saw Mercado repeatedly throughout the day. Since it was this repeated presence that both the District Court and our Court relied on to uphold the convictions, Agent Pedrini's hearsay was "highly damaging." *United States v. Mercado*, Nos. 08-541, 11-778, 2012 WL 1536970, at *9 (E.D. Pa. May 2, 2012). Furthermore, given the closeness of the case, the District Court concluded that there was a "reasonable probability" that trial counsel's deficient performance altered the outcome of the case and therefore was prejudicial. *Id.* at *10.

This timely appeal followed.

## II.

"We review the district court's findings of fact for clear error. We must make an independent judgment, however, on whether the facts thus found constitute constitutionally ineffective assistance of counsel." *Government of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996).

## III.

To prevail on his claim of ineffective assistance of counsel, Mercado had to show that his counsel's performance was unreasonable in light of professional norms and that this performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Sixth Amendment to the United States Constitution confers a great deal of latitude on counsel to make reasonable professional judgments. Indeed, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. And "strategic choices made

8

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. In conducting this review, a district court must resist the urge to second guess counsel's decision for "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id*. at 689. We review the District Court's ruling de novo.

Bearing all this in mind, we conclude that counsel's trial performance was not constitutionally ineffective. Defense counsel decided to accept and credit Agent Pedrini's testimony because it supported his theory of the case—namely, that Mercado was a bystander and not a participant in the drug transaction. While defense counsel may not have prevailed in convincing the jury of this theory, his strategy was not an unreasonable one. In fact, the theory persuaded the District Court Judge, who observed that he would have voted for acquittal.

In ruling on the § 2255 petition, the District Court concluded that reasonable defense counsel would have objected to Agent Pedrini's testimony so as to render it inadmissible and would have tried to impeach Rodriguez-Nunez's testimony that Mercado had accompanied Morrisette on earlier meetings throughout the day, urging the jury that Rodriguez-Nunez was not credible. This conclusion is flawed in two respects. First, it is not clear that the testimony would have been ruled inadmissible.[4] Second, such a strategy would have put defense counsel in the untenable position of arguing to the jury

---

[4] The government urges that Agent Pedrini's account of Rodriguez-Nunez's identification of Mercado was admissible under Federal Rule of Evidence 801(d)(1)(C), which provides that a statement that "identifies a person as someone the declarant perceived earlier" is not hearsay.

that Rodriguez-Nunez was lying about Mercado's presence at earlier meetings but was telling the truth to Agent Pedrini and at trial that Mercado did not participate in the transaction where agents observed Rodriguez-Nunez retrieve the drugs from a car containing the two men. Furthermore, while we concluded a jury could draw an inference of involvement based on the frequency of the meetings, nonetheless urging that the testimony revealed no criminal conduct on the part of Mercado was not an implausible strategic choice.[5]

The District Court's preferred strategy may have been a successful strategy, but we believe it was not the only reasonable one.[6]

## IV.

For the reasons stated above, we will reverse the order of the District Court and direct it to deny habeas relief and reinstate the judgment of conviction.

---

[5] We note that counsel testified that he affirmatively chose this strategy. The District Court appears to have discredited this but did not provide a basis for doing so.

[6] Since counsel's strategy was not professionally unreasonable, we need not reach the question of whether the testimony was in fact inadmissible hearsay or whether it caused Mercado prejudice.