NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1234
_____

UNITED STATES OF AMERICA

v.

GEORGE GILMORE,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-19-cr-00029-001)
District Judge: Honorable Anne E. Thompson
_____

Submitted on November 9, 2020

Before: HARDIMAN, GREENBERG, and SCIRICA, *Circuit Judges*.

(Filed: December 4, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

George Gilmore appeals his judgment of conviction after a jury found him guilty of federal tax and financial crimes. We will affirm.

I

Gilmore is an attorney and a founding partner of the law firm of Gilmore & Monahan, P.A. Gilmore exercised exclusive control over the firm's financial decisions, including expenditures, bills, and taxes. Under Gilmore's management, the firm had a history of submitting late payroll tax payments. Gilmore received numerous warnings from Internal Revenue Service agents—both written and in-person—regarding the firm's payroll tax obligations. Gilmore did not heed the warnings and continued to submit the taxes late.

Gilmore's failures to timely pay the firm's taxes were not his only financial misdeeds. After he was denied a personal loan in 2014 due to outstanding debt obligations, Gilmore applied for a $1.5 million loan in 2015. On that loan application, Gilmore did not disclose his outstanding tax obligations of roughly $500,000 or his outstanding personal debt to Dale Orlovsky of over $270,000. Instead, Gilmore checked the "no" box when asked whether he was "presently delinquent or in default on any Federal debt," App. 3367, and omitted the Orlovsky loan from his list of "all outstanding debts." App. 3366.

On January 10, 2019, a grand jury indicted Gilmore for several tax and financial crimes. After trial, the verdict was mixed. Gilmore was acquitted on two counts and the

jury was deadlocked on one count. But Gilmore was convicted on two counts of failing to collect, account for, and pay over payroll taxes in violation of 26 U.S.C. § 7202, and one count of making a false statement in a loan application in violation of 18 U.S.C. § 1014. After trial, Gilmore moved for a judgment of acquittal and a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure, but the District Court denied the motions. The District Court sentenced Gilmore to a year and a day in prison and three years of supervised release. Gilmore filed this timely appeal challenging only his conviction.[1]

## II

### A

Gilmore first claims the District Court erred by excluding the expert testimony of Dr. Steven Simring. Gilmore proffered Dr. Simring as an expert witness to refute the Government's assertion that Gilmore acted willfully in failing to pay his overdue payroll taxes. The Government moved *in limine* to exclude Dr. Simring and his testimony. Citing our decision in *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987), the District Court granted the Government's motion, excluding Dr. Simring's testimony under Rules 702 and 703 of the Federal Rules of Evidence.

According to Gilmore, Dr. Simring's testimony would have informed the jury that because Gilmore was a compulsive hoarder, his failure to timely pay taxes could not be considered willful or voluntary. Dr. Simring would have explained to the jury that

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

3

Gilmore "suffers from a mental-health disorder that explains his otherwise irrational behavior of not paying taxes while knowing that such failure would be apparent to the IRS." Gilmore Br. 27 (internal quotations omitted). Gilmore further argues that "[a]s [Dr.] Simring would have testified, Gilmore felt compelled to make those personal expenditures by his hoarding disorder" because "[c]ollecting ha[d] long ago overwhelmed his good judgment, and ha[d] taken over a large portion of his life." *Id.* at 23 (internal quotations omitted). Gilmore claims that permitting Dr. Simring's testimony at trial would have "given the jury an admissible alternative explanation of the behavior the Government presented as proof of willfulness." *Id.* at 17.

As we noted in *Pohlot*: "District courts should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea." 827 F.2d at 905–06. We cautioned that evidence of diminished volitional control or the lack of ordinary self-judgment does not constitute an acceptable theory of lack of mens rea. *Id.* at 906 ("[A] lack of self-reflection does not mean a lack of intent and does not negate mens rea."); *accord United States v. Cameron*, 907 F.2d 1051, 1066 (11th Cir. 1990) (holding that evidence "of an incapacity to reflect or control the behaviors that produced the criminal conduct" does not constitute "psychiatric evidence to negate specific intent and should not be admitted" (internal quotation marks omitted)); *id.* at 1062 ("Psychiatric evidence of impaired volitional

4

control or inability to reflect on the ultimate consequences of one's conduct is inadmissible . . . .").

The proffered testimony of Dr. Simring is like the testimony we held inadmissible in *Pohlot*. Dr. Simring's report sought to explain away the element of willfulness by noting that Gilmore suffered from a hoarding disorder that "overwhelmed his good judgment." Gilmore Br. 23. But evidence of a lack of volitional control does not constitute a "legally acceptable theory of a lack of mens rea," as "any showing of purposeful activity, regardless of its psychological origins," will generally satisfy mens rea. *Pohlot*, 827 F.2d at 904–06. So the District Court's exclusion of Dr. Simring's testimony was no abuse of discretion. *See, e.g.*, *United States v. Foster*, 891 F.3d 93, 107 n.11 (3d Cir. 2018) (holding that reversal is appropriate only when "the district court's decision is arbitrary, fanciful, or clearly unreasonable").

The District Court also rightly noted that Dr. Simring's testimony was "largely a conduit for hearsay . . . [as it contained] more of Gilmore's would be testimony than [expert] opinion . . . as if the tail wags the dog." App. 7. An expert may rely on otherwise inadmissible facts and data to form his opinion, but those facts and data may be put to the jury only if they are of the type other experts in the field would reasonably rely upon, and if their "probative value . . . substantially outweighs their prejudicial effect." FED. R. EVID. 703.

Here, the probative value of Gilmore's statements contained in Dr. Simring's report do not substantially outweigh their prejudicial effect. The document contained

numerous statements that simply proclaimed Gilmore's innocence without informing any expert conclusion. For example, the report included: "He told me he would never dream of hiding income tax or taking any other illegal steps to evade taxes" and "He told me he has never filed a false tax return." App. 6. We agree with the District Court that dressing up Gilmore's statements in the guise of expert opinion does not render such statements— or the expert opinion itself—admissible.

In sum, because Dr. Simring's testimony would not have provided a legally acceptable theory of a lack of mens rea, and it would have been an impermissible conduit of hearsay, the District Court did not err in ruling it inadmissible.

B

Gilmore next challenges the District Court's jury instructions on willfulness. The Court instructed that willfulness could not be found if Gilmore believed in good faith that "the tax laws did not make his conduct unlawful." App. 2412. Gilmore requested the word "criminal" be used instead of "unlawful." App. 335. Gilmore claims the instruction was legally erroneous because it equated belief of "unlawful" action with belief of "criminal" action. Gilmore Br. 43.

Contrary to Gilmore's claims, willfulness in the context of tax crimes merely requires knowledge and violation of a duty. It does not require knowledge that one is committing a criminal act. As the Supreme Court has made clear, "the standard for the statutory willfulness requirement is the voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (internal quotation marks

6

omitted). Thus, to prove willfulness, the Government had to show "that the law imposed a *duty* on the defendant, that the defendant knew of this *duty*, and that he voluntarily and intentionally violated that *duty*." *Cheek*, 498 U.S. at 201 (emphasis added). There is no requirement that a person must be aware that the conduct is criminal. It is enough that he knew he had a legal duty and violated it—in other words, that he acted unlawfully.

For these reasons, we hold the District Court did not err in instructing the jury on the willfulness requirement.

C

Gilmore's next two claims relate to the sufficiency of the Government's evidence. First, he argues there was insufficient evidence to find he acted willfully in violating a known duty to pay his payroll taxes. Second, he claims the evidence was insufficient to prove his loan application contained knowingly false statements.

Gilmore cites myriad facts and evidence that may have supported a verdict of acquittal. The problem with this approach, of course, is that it fails to present the evidence in the light most favorable to the verdict winner (here, the Government). *See, e.g.*, *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010). The record is replete with evidence from which a rational jury could conclude both that Gilmore willfully violated a known duty when he failed to timely pay taxes and that he submitted a loan application that contained knowingly false statements.

As to the former, the jury heard extensive testimony from IRS Agent Miriam Popowitz about Gilmore's repeated failures to pay payroll taxes on time, despite the

many warnings he received. Agent Popowitz's testimony provided the jury with more than enough to conclude that Gilmore willfully violated a known duty to pay taxes.

As to the latter, the prosecution presented evidence pertaining to Gilmore's massive tax debt (nearly $500,000 at the time he applied for the loan), as well as testimony about the roughly $270,000 he and his wife owed Orlovsky. Given this evidence, a jury could reasonably conclude that Gilmore's failure to disclose his tax liability when asked whether he was "delinquent or in default on any Federal debt," App. 3367, as well as his omission of the Orlovsky loan when asked to list "all outstanding debts," App. 3366, constituted the submission of a loan application containing knowingly false statements.

For these reasons, Gilmore's arguments fall well short of the "highly deferential" standard we apply to sufficiency of the evidence claims. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc).

D

Finally, Gilmore contends the evidence was insufficient to convict him on Count 6 of the superseding indictment—that Gilmore's failure to list his outstanding tax obligations as "Federal debt" constituted the making of a false statement in a loan application. Because Gilmore raised this issue for the first time in his post-trial motions, he must satisfy the exacting plain error standard. *See United States v. Olano*, 507 U.S. 725 (1993). Even if we were to assume the Government's theory regarding Gilmore's

outstanding tax obligations was legal error, Gilmore's argument fails because he cannot show that the error affected his substantial rights. *See id*. at 733.

Here, the Government presented a "clear alternative theory of guilt" such that Gilmore "likely cannot show that an instruction permitting the jury to convict on an improper basis was not harmless error." *United States v. Andrews*, 681 F.3d 509, 521 (3d Cir. 2012). Orlovksy testified he had consciously made a personal loan to Gilmore (not to his law firm) "to make certain that I had him liable, not the corporate entity . . . ." App. 1843. Additionally, the loan agreement between Gilmore and Orlovsky—listing Gilmore and his wife as the recipients, *not* the firm—was entered into evidence. *See* App. 3438–49 (Ex. 3003–C). Gilmore claims he thought the loan was a law firm liability, not a personal one. Gilmore Br. 52. But the jury was not required to accept that testimony and to assume it did at this stage would violate our duty to view the evidence in the light most favorable to the Government. So ample evidence existed from which the jury could conclude Gilmore lied on a loan application when he failed to disclose his debt to Orlovsky.

In sum, Gilmore cannot demonstrate "a reasonable probability that the error affected the outcome of the trial." *Andrews*, 681 F.3d at 521. So he cannot meet the third prong of *Olano*.

\*　　　\*　　　\*

For the foregoing reasons, we will affirm Gilmore's judgment of conviction.

9